IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAMADA WORLDWIDE, INC., formerly known )
as RAMADA FRANCHISE, INC., )
)
      Plaintiff, )
)
  v. ) No. 06 C 11
)
HOMEWOOD HOTEL, INC., SATISH SETHI, )
and ELIZA SHETHI, )
)
      Defendants. )

MEMORANDUM OPINION AND ORDER REGARDING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES F. HOLDERMAN, Chief Judge:

Before this court is plaintiff Ramada Worldwide, Inc.'s ("Ramada") motion for summary judgment (Dkt. No. 41) in its trademark infringement and breach-of-contract suit against one of its former franchisees, Homewood Hotel, Inc. ("Homewood"), and its owners and guarantors, Satish and Eliza Shethi. For the reasons stated below, the motion is granted.

BACKGROUND

The defendants admit most of the facts set out in Ramada's L.R. 56.1 statement. The lawsuit stems from a valid and binding License Agreement ("Agreement") entered into by Ramada and the defendants on November 1, 2000, amended on October 12, 2002, and an Addendum to the License Agreement for Satellite Connectivity Services ("Addendum") entered into on June 2, 2003. (Pl. 56.1 ¶¶ 17, 18.) As relevant here, in exchange for permission to use the Ramada mark and other benefits, the defendants were obligated to operate a Ramada guest lodging facility for a 15-year term and make periodic, monthly payments to Ramada for

1

royalties, services assessments including advertising, marketing and training, taxes, interest, reservation system user fees, annual conference fees, and other fees, collectively referred to as "Recurring Fees." (*Id*. ¶¶ 19, 21.) Royalty fees were calculated based on 4% of the monthly gross guest room revenues, and service assessments along with the reservation system fees and other services and programs are accounted based on 4.5% of the monthly gross guest room revenues. (*Id*. ¶ 22.) To determine the amount of Recurring Fees, the defendants submitted to Ramada monthly revenue reports detailing the gross room revenues for the Homewood facility. (*Id.* ¶ 23.) Any unpaid amounts owed to Ramada under the Agreement would be assessed interest at a rate of the lesser of 1.5% or the maximum rate permitted by applicable law. a month, until the amount was paid. (*Id*. ¶ 24.)

Should the defendants not timely pay the amount owed to Ramada, fail to remedy any other default of their obligations and warranties under the Agreement in 30 days after written receipt of notice from Ramada specifying one of the defaults, or accumulate two or more notices of default under the Agreement within the period of a year, regardless whether the defaults were cured, Ramada could terminate the Agreement with notice to Homewood. (Pl. 56.1. ¶25.) In the event of a premature termination two years or more before the 15-year term, that did not comply with the exceptions set out in the Amendment to the Agreement, the defendants expressly agreed to pay Ramada liquidated damages in the amount of $150,000, and additional $1000 in liquidated damages for the premature termination of the Addendum. At the time of the agreement, the defendants concede that counsel for the defendants successfully negotiated with Ramada for a lower liquidated damages amount. (Def. 56.1 Resp. ¶ 29.). Specifically, the defendants admit that the liquidated damages provision in the Agreement "was the result of an

informed, negotiated compromise between the parties." (*Id*. ¶¶ 29, 31.) In addition, the defendants admit that the liquidated damages were set because actual damages would be difficult or impossible to ascertain on the execution date of the Agreement and the agreed-on amount was a reasonable pre-estimate of the damages that would be incurred and was not a penalty. (*Id*. ¶¶ 27, 31.) The defendants also had to immediately cease using any of Ramada's marks upon premature termination of the Agreement. (Pl. 56.1 ¶ 32.) For any action brought to enforce the Agreement, the nonprevailing party contracted to pay all costs and expenses, including reasonable attorneys' fees incurred by the prevailing party. (*Id.* ¶ 33.)

The defendants concede that they failed to pay Recurring Fees owed to Ramada in the amount of $ 100,763.18, inclusive of interest, and did not submit monthly gross guest room revenue reports from June 22, 2004 until the termination of the Agreement on December 29, 2004 by Ramada based on the defendants' default. (Pl. ¶¶ 39-43, 50) The defendants also admit that the Shethis are jointly and severally liable for Homewood's obligations under the Agreement. (*Id.* ¶ 37.)

Ramada sent the defendants three letters regarding their failure to pay their monthly Recurring Fees and submit their monthly gross revenue reports before terminating the Agreement in a letter dated December 29, 2004. In a letter dated June 24, 2004, Ramada first gave the defendants notice of default. (Pl. 56.1 ¶ 40.) Ramada subsequently sent the defendants further notice of default in letters dated November 10, 2004 and November 24, 2004. (*Id.* ¶¶ 41, 42.) In the letter dated December 29, 2004, Ramada terminated the Agreement effective December 29, 2004, and informed the defendants that, in addition to paying all past due Recurring Fees and other charges, they had to perform the post-termination obligations,

3

including the de-identification of the facility of all items pertaining to the Ramada marks within 14 days of the termination date of December 29, 2004. (*Id*. ¶¶ 43-44.) As relevant here, the de-identification procedures that Ramada attached to the termination letter specified that the defendants were to remove any Ramada marks from the facility's signage, all interior signage, billboards, stationary, pads, pens, business cards, directories and brochures, folios and registration cards, do-not-disturb signs, laundry bags, telephone plates, telephone dialing instruction, door signage, rate/law cards, soap, shampoos, key tags, credit card imprinter, name tags/uniforms, ice buckets/trays, ashtrays/matches, plaques, guest checks, receipts, and menus, as well as Ramada trade dress and paint schemes. (Pl. Ex. H.) The procedures also advised that Ramada "quality assurance inspectors will visit the Facility at any time after ten days after the Termination date to verify that you have performed these de-identification obligations." (*Id*.)

      On February 16, 2005, about a month after the 14-day time limit for the defendants to de-identify the Homewood facility expired, a quality assurance inspector visited the Homewood facility. In his report, the quality assurance inspector noted that the Ramada mark had been removed from the exterior signage, TV channel ID plates, door signage, ashtrays/matches, plaques, menus, and ashtrays. (Pl. Ex. I.) But the quality assurance inspector noted that many items still carried the Ramada mark including: signage from interior public areas, stationery/pads/pens, directories/brochures, business cards, folios/registration cards, do-not-disturb signs, comment cards, telephone plates, rate/law cards, soap/shampoo, key tags, credit card imprinter, laundry bags, name tags/uniforms, ice buckets/trays, and guest checks/receipts. (Pl. Ex. I.) Attached to the report provided by the quality assurance inspectors are time-stamped photographs from February 16, 2005, documenting and corroborating his report. (*Id.*)

4

According to Satish Shethi, either by February 17, 2004 or by March 2004, the entire de-identification process was complete. (Satish Shethi Dep. at 85.) Satish Shethi, however, contradicts himself even in his own deposition, stating at first that he only continued to use some of the trademarks for "a few days or whatever," (*id*. at 34) and then clarifying that the de-identification process took "more than a few weeks" (*id*. at 82,) before explicitly testifying that the complete de-identification was accomplished "Sometime in March a hundred percent." (*id*. at 85.) When counsel for Ramada asked, "So sometime in March, but you don't know specifically when?," Satish Shethi responded "Right before March. Right after this gentleman [the quality assurance inspector] came out and he found some items." (*Id*. at 86.) Counsel for Ramada and Satish Shethi continued their exchange:

> Q. Okay. At what point was the de-identification completed at the hotel?
>
> A. March.
>
> Q. By March?
>
> A. Yeah.
>
> Q. And you don't know what date in March, correct?
>
> A. February 17. Right after that.
>
> Q. You're saying the next day.
>
> A. Yeah. Actually the same day when the gentleman came in to take the picture . . .

(*Id*. at 87.) The defendants also submitted several undated and unauthenticated photographs that were taking, according to Satish Shethi's deposition, sometime in May 2005, that show the completion of the de-identification process. (*Id*. at 19-20, 88.) Even assuming that these were taken in May 2005, the photographs have no bearing on whether the de-identification

5

process was completed by February 17, 2005, which is the relevant timeframe put at issue in this case. There is, however, sufficient evidence for purposes of summary judgment that the defendants replaced the exterior Ramada sign with a sign reading "Homewood Hotels" in a timely manner at the beginning of January 2005. (*Id.* at 21, 80.)

On January 3, 2006, Ramada filed a 13-count lawsuit against the defendants alleging several trademark infringement claims under the Lanham Act and breach of contract claims. Ramada has now filed this motion for summary judgment, and the defendants have conceded both the guarantor liability of Satish and Eliza Shethi and the owing of Recurring Fees in the amount of $100,763.18, inclusive of interest. (Def. 56.1. Resp. ¶¶ 37, 50.) The defendants instead challenge only two issues: (1) that they did not timely de-identified the Homewood facility, and (2) that the liquidated damages provision should apply.

LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, this court takes all facts and inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S.

317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Work Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

ANALYSIS

Turning first to the trademark infringement issue, the defendants dispute that they continued to use the Ramada marks, relying for support on unsworn interrogatory answers, conclusory denials of requests to admit, their answer to the complaint, undated photographs that are allegedly from May 2005, and the deposition of Satish Shethi. Of these sources, only the deposition testimony of Satish Shethi can be considered by the court for purposes of summary judgment. *See Dillard v. Chicago Transit Authority*, No. 00-C-8028, 2003 WL 22136309, *2 n.1 (N.D. Ill. Sept. 16, 2003) (submission by a party of his own answers to opposing counsel's interrogatories—sworn or unsworn—constitutes inadmissible hearsay on summary judgment); *Fucarino v. Thornton Oil Corp.*, No. 98 C 1429, 1999 WL 691820, *7 (N.D. Ill. Aug. 23, 1999); see also *Stinnett v. Iron Work Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) (evidence relied upon must be competent evidence of a type otherwise admissible at trial). Furthermore, Satish Shethi's deposition testimony does not create genuine issues of material fact with regard to whether the defendants timely de-identified the Homewood facility. Ramada seeks damages for trademark infringement only up until February 17, 2006, which Satish Shethi concedes in his deposition is the earliest date by which the complete de-identification was

accomplished. With this admission from Shethi, there is no dispute: the defendants failed to complete the de-identification within the mandated 14 days following the termination of the Agreement and should be assessed damages for trademark infringement up until the day, Feburary 17, 2006, that the defendants concede that the infringement stopped.

The defendants also appear to argue that the removal of the exterior Ramada sign was sufficient to satisfy the de-identification requirements, and that once the exterior Ramada sign was removed, there was no infringement. To prevail on a trademark infringement claim, a plaintiff need only prove that the mark is entitled to protection and that there is a likelihood of confusion concerning the origin of services. *Sullivan v. CBS Corp.*, 385 F.3d 772, 775-76 (7th Cir. 2004). To determine likelihood of confusion, the court may consider the similarity of the marks and the product; the area and manner of concurrent use; the degree of care likely to be used by consumers; the strength of the plaintiff's mark; whether any actual confusion exists; and the defendant's intent to palm off its goods as those of the plaintiff. *Id.* at 776; *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). There is no dispute between the parties regarding the validity of Ramada's trademarks. With regard to whether there is a likelihood of confusion, the defendants view the exterior sign as "the only possible realistic means of confusing a prospective renter of a guest room or creating the mistaken impression that the Facility was still an approved Ramada franchisee" and its removal "effectively ended" any "opportunity of confusion or mistaken impression." (Def. Resp. at 6-7.)

The court disagrees. The continued use of a mark by a former franchisee after the termination of an a license agreements creates a "near certainty of confusion." *Dunkin' Donuts v. Towns Fam., Inc.*, No. 95 C 3666, 1996 WL 328018, *5 (N.D. Ill. Jun. 11, 1996); *see also*

8

*Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *My Pie, Int'l, Inc. v. Debould, Inc*. 687 F.2d 919, 921-22 (7th Cir. 1982); *Ramada Franch. Sys., Inc. v. Royal Vale Hospitality of Cinn., Inc.,* No. 02 C 1941, 2005 WL 435263, *15 (N.D. Ill. Feb. 16, 2005); *Bunn-O-Matic Corp. v. Bunn Coffee Servs., Inc*, 88 F.Supp. 2d 914, 922 (N.D. Ill. 2000). Although a prospective guest may not believe there is an association with Ramada and the defendants from the new exterior sign stating "Homewood Hotels," once the prospective guests see Ramada products such as shampoos and soaps and other items *with* the Ramada mark, such as those documented by the quality assurance inspector on February 16, 2005, the guests would then have a mistaken impression of a relationship between Ramada and the defendants. That likelihood of confusion harms Ramada because Ramada cannot control the nature and quality of the Homewood facility's services. *See Simon Property Group, L.P. v. mySIMON, Inc*., 282 F.3d 986, 990-91 (7th Cir. 2002). Despite agreeing to stop using Ramada's marks in the event of the termination of the Agreement and receiving a specific list of procedures for how to de-identify the Homewood facility in the December 29, 2004 letter from Ramada, the defendants chose to continue using certain of Ramada's marks without authorization until at least February 17, 2005. *See Sands, Taylor & Wood v. Quaker Oats Co. (Sands II)*, 34 F.3d 1340, 1351 (7th Cir.1994) (treble damages for wilful infringement is especially appropriate in franchise or licensing context because without treble damages "there is no incentive to engage in protracted, expensive, and perhaps unsuccessful licensing negotiations when the consequence of getting caught for trade piracy is simply to pay what should have been paid earlier [royalty fees]"); *Gorenstein*, 874 F.2d at 436; *Sparks Tune-Up Ctrs., Inc. v. Strong*, 1995 WL 153277 (N.D. Ill. Apr. 6, 1995). The court finds the defendants' conduct to be wilful.

The court agrees with Ramada's argument that the proper calculation of damages is a reasonable royalty fees for the period of infringement, based on the royalty fees originally negotiated in the Agreement, trebled for the defendants' willful conduct. *See, e.g.*, *Sands, Taylor & Wood Co. v. Quaker Oats Co. (Sands I )*, 978 F.2d 947 (7th Cir. 1992) (accepting idea of reasonable royalty fee for damage calculation in trademark infringement); *Sands II*, 34 F.3d at 1344-45 (same); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999); *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1563-65 (11th Cir. 1986); *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 75-76 (5th Cir.1979) (royalty awarded based on license fee that defendant offered to pay but which plaintiff rejected); *see also Ramada Franch.Sys.*, 2005 WL 435263 at *16. The amount owed by the defendants for the counts of trademark infringement is $27,839.07 (or $9,279.69 trebled).

The court next addresses the issue of liquidated damages, applying New Jersey law, as specified in the Agreement. The defendant admit that they breached the Agreement with Ramada by failing to pay the Recurring Fees owed and submit monthly revenue reports to Ramada and that Ramada substantially performed all of its obligations under the Agreement. (Def. Resp. 56.1. ¶¶ 35, 39.) The only dispute between the parties regarding the defendants' breach of the Agreement is whether liquidated damages provisions should be applied to satisfy the damages owed to Ramada.

Where parties have comparative bargaining power, liquidated damages provisions should be deemed presumptively reasonable, and thus enforceable, and the party challenging the clause has the burden of proving otherwise. *See Wasserman's Inc. v. Township of Middletown*, 645 A.2d 100, 108 (N.J. 1994). For a liquidated damages provision to be enforced, the provision

must be an advance estimation of probable damages, rather than a penalty. *Id.* at 106. To determine whether a liquidated damages provision is enforceable, a court must determine whether the fixed amount of damages is a reasonable estimation of damages and whether the harm is incapable or very difficult to calculate accurately. *Id.* at 106-07. These two prongs are treated are not independent of each other but instead treated as a continuum as elements of reasonableness; the more difficult damages are to calculate, the less close the estimate of future damages needs to be. *Metlife Cap'l Fin. Corp. v. Wash. Ave. Assocs., L.P.,* 732 A.2d 493, 498 (N.J. 1999). Courts may assess reasonableness of damages either at the time of contract or at the time of breach. *Wasserman's,* 645 A.2d at 107.

The defendants challenge the enforceability of the liquidated damages provision, asserting that the actual damages are easily calculated and that the liquidated damages were "exorbitant" and not reasonably related to any anticipated or actual loss because the defendants were only associated with Ramada for four years. (Def. Resp. at 11-12.) The defendants additionally characterize Ramada's bargaining position as "extremely dominate and disproportionate" and argue that the liquidated damages provision is thus not entitled to a presumption of validity. (*Id*. at 11.) According to the defendants, the "prospective franchisee has little choice in the take-it-or-leave-it bargaining posture of Ramada," and that the franchisee must "either accept[ ] the agreement 'as is' with no changes" or "no franchise is attainable." (*Id.*)

Arguing in favor of the application of the liquidated damages provision, Ramada contends that the actual damages caused by the premature termination of the Agreement are difficult or impossible to estimate properly due to the termination of the Agreement 11 years

11

early; the inability to Ramada to replace the site in Homewood resulting in lost royalties and presence in the market; and difficulty of determining future Recurring fees for 11 years out since such fees are calculated based on the Homewood facility's monthly gross revenues. Ramada also argues that the liquidated damages provision is presumptively valid because the undisputed fact that the defendants successfully negotiated a lower liquidated damages provision establishes that the parties' bargaining power was comparable.

In the court's review of the undisputed evidence, there is no question that the liquidated damages provision is entitled to a presumption of validity and that the defendants have the burden of proof in establishing that it is unenforceable. Contradicting their own unsupported assertion that they had to accept the Agreement "'as is' with no changes—including the punitive stipulated damages," (Def. Resp. at 11), the defendants admit in their Local Rule 56.1 responses that they successfully negotiated a lower liquidated damages provision in the contract and that the provision amount was "the result of an informed, negotiated compromise between the parties." (Def. Resp. 56.1. ¶ 29.) Based the parties' agreed "informed, negotiated compromise" for the liquidated damages provision, the court finds that the provision is entitled to the presumption of validity and that the defendants bear the burden of proving that the provision is unenforceable. *Wasserman's*, 645 A.2d at 108.

After considering both the reasonableness of the probable-damages estimation and the difficulty of calculating the amount of damages at both the execution of the contract and at the breach, the court finds that the liquidated damages provision is valid and enforceable. In making this determination, the court relies on the defendants' additional admission that the liquidated damages amount was set "'because actual damages would be difficult or impossible to ascertain

on the Effective Date and the amount is a reasonable pre-estimate of the damages that would be incurred and is not a penalty.'" (Def. Resp. 56.1 ¶ 27.) The court notes that the defendants appear in their response to the plaintiff's Local Rule 56.1 Statement of Facts ¶ 27 to concede both elements of the test for determining whether a liquidated damages provision is enforceable: (1) the reasonable estimation of actual probable damages and (2) the difficulty of ascertaining the amount of actual damages. The defendants, however, later in their response to plaintiff's Local Rule 56.1. Statement of Facts ¶ 30 explicitly deny that the "liquidated damages amount to which the parties agreed was intended to represent the parties' best estimate of the damages that would result from a premature termination of the License Agreement." (Def. Resp. 56.1 ¶ 30; Pl. 56.1. ¶ 30.)

Even if the court does not view the defendants as conceding the difficulty of estimating actual damages based on its response to the plaintiff's Local Rule 56.1 Statement of Facts ¶ 27, the court finds that there is no genuine issue of material fact regarding both the reasonableness of the estimation of actual damages and the difficulty of calculating the actual damages. Ramada's loss of revenues is indeterminate because there would be great difficulty in estimating damages based on percentages of 11 years of future monthly gross revenues at the Homewood facility. In addition to the difficulty of calculating the loss of fees, Ramada has also incurred a certain indeterminable amount damages due to the loss of its market presence in the Homewood area as a result of the defendants' breach and Ramada's inability to locate another Homewood facility. Furthermore, the defendants concede that they owe Ramada $100,763.18 in Recurring Fees and interests going back to their June 2004 default, yet, in their argument against the enforcement of the liquidated damages provision, the defendants contend without explanation that the $160,000

13

($150,000 from the Agreement plus $1000 from the Addendum) is an "exorbitant" amount. The court fails to understand why $160,000 for breaching a contract that should have lasted 11 more years, providing Ramada with Recurring Fees during those 11 more years, is not reasonable, especially when the court takes into account that the defendants already owe $100,763.18 in Recurring Fees plus interest just from their June 2004 default. The liquidated damages provision is valid and enforceable.

## CONCLUSION

Accordingly, the plaintiff's motion for summary judgment (Dkt. No. 41) is granted. Judgment is entered for the plaintiff and against the defendants, jointly and severally, in the total amount of $328,838.25, plus interest at the Agreement's rate of the lesser of 1.5% or the maximum rate permitted by law, and attorneys' fees and costs. The $328,838.25 damages award is comprised of $27,839.07 for infringement damages on Counts I-VII and XIII; $100,763.18 in Recurring Fees and interest on Counts XI and XIII; and $200,236 in liquidated damages and interest on Counts IX, X, and XIII. Parties should follow the procedures set out in local rules regarding costs and attorneys' fees.

ENTER:

*[signature: James F. Holderman]*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 5, 2007